IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:12-CV-354-FL

| | | |
|---|---|---|
| SARA L. FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LELAND VOLUNTEER | ) | ORDER |
| FIRE/RESCUE DEPARTMENT, INC. | ) | |
| and JOHN GRIMES, in his individual | ) | |
| and official capacity as Chief of the | ) | |
| Department, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for summary judgment. (DE 27).

Also pending before the court is defendants' motion to strike. (DE 36). The issues raised have been

fully briefed, and in this posture are ripe for ruling. For the reasons stated more specifically herein

defendants' motion to strike is granted in part, and defendants' motion for summary judgment is

granted.

**STATEMENT OF THE CASE**

Plaintiff, formerly a paid lieutenant with defendant Leland Volunteer Fire and Rescue

Department ("Leland") from June 2008, until January 2011, commenced this action by complaint

dated December 21, 2012. Plaintiff sues defendant Leland and defendant John Grimes ("Grimes"),

her former supervisor, for violations of Title VII of the Civil Rights Act, 42 U.S.C. §§2000e *et seq.,*

and certain Constitutional violations, where defendant Leland is a state actor. In particular, plaintiff

alleges (1) defendants retaliated against her by firing her after she reported sexual harassment from

a co-worker, in violation of Title VII; (2) defendants retaliated against her for speaking out about her alleged sexual harassment, a matter of public concern, in violation of the First Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983; (3) defendants subjected her to hostile work environment harassment, in violation of Title VII; and (4) defendants subjected her to hostile work environment harassment, constituting a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, also enforced through § 1983.

After a period of discovery in the case, defendants seek summary judgment on all claims against them. Defendants contend the court lacks jurisdiction over plaintiff's Title VII harassment claim, as she failed to exhaust her administrative remedies regarding that claim. Defendants also argue that plaintiff has presented insufficient evidence in support of both her Title VII and § 1983 harassment claim, and thus that those claims fail on the merits. Defendants further argue plaintiff cannot establish a retaliation claim under either Title VII or § 1983. Finally, defendant Grimes argues all claims against him in his individual capacity must fail, where he is entitled to qualified immunity.[1]

---

[1]In support of their motion for summary judgment defendants rely on(1) the deposition of defendant Grimes (Grimes Dep., DE 28-1), and attached exhibits and (2) plaintiff's deposition (Fox Dep.), and associated exhibits. Defendants also rely on the declaration of Diane Grimes, defendant Grimes' wife and a member of defendant Leland's Board of Directors. (D. Grimes. Decl., DE 29).

In opposition to defendants' motion, plaintiff relies on defendant Grimes deposition; a description of the "fire chief" position (Position Description, DE 32-2); Minutes from defendant Leland's May 27, 2009, Board of Directors Meeting (May 2009 Board Minutes, DE 32-3); defendant Leland's written discipline procedures (Discipline Procedures, DE 32-4); the deposition of defendant Leland's assistant chief Ronald Hayes (Hayes Dep., DE 32-5); defendant Leland's harassment policy (Harassment Policy, DE 32-6); plaintiff's declaration (Fox Decl., DE 32-7); an email from plaintiff to Christopher Hunt, one of plaintiff's co-workers and a lieutenant overseeing another shift with defendant Leland (Hunt Email, DE 32-8); Minutes from defendant Leland's January 12, 2011, Board of Directors Meeting (January 12, 2011, Board Minutes, DE 32-9); emails from plaintiff to defendant Grimes and assistant chief Hayes complaining of discrimination (Discrimination Complaint, DE 32-10); a letter from Kelly Gore, a female firefighter with defendant Leland, to defendant Grimes (Gore Letter, DE 32-11); Minutes from defendant Leland's January 3, 2011, Board of Directors meeting (January 3, 2011, Board Minutes, DE 32-12); plaintiff's EEOC intake questionnaire (EEOC Intake Questionnaire, DE 32-13); plaintiff's formal Charge of Discrimination (EEOC Charge, DE 32-14); plaintiff's EEOC Right to Sue Letter (Right to Sue Letter, DE 32-15); defendant Grimes EEOC affidavit (Grimes Aff., DE 32-16); notes taken by an EEOC investigator at defendant Grimes EEOC interview (Grimes Interview Notes, DE 32-17); plaintiff's

**STATEMENT OF FACTS**

Defendant Leland provides fire and emergency medical services to Brunswick County, and to New Hanover, Pender, Bladen, and Columbus Counties by agreement. (Grimes Dep. 17:17-18:8). It employs approximately 19 career employees and relies on the assistance of approximately 85 additional volunteers to meet its staffing needs. (Id. 27:21-28:19). Defendant Leland is overseen by a board of directors, which is headed by a president. (Id. 37:13-19). However, its day-to-day management comes from defendant Grimes, its highest ranking career employee. (See id. 37:20-22). Directly subordinate to defendant Grimes is assistant chief Ronald Hayes. (Id. 37:23-38-1). Beneath Hayes is a team of eight lieutenants, four career, who each oversee a "shift" of volunteer and career first responders and emergency medical providers. (Id. 38:2-18).

Plaintiff began work with defendant Leland in 2008, as a career Firefighter/Paramedic. (Fox Dep. 47:14-15). In 2009, after a competitive application process, plaintiff was promoted to career lieutenant, becoming defendant Leland's first female career lieutenant. (See id. 47:16-23; Grimes Dep. 100:11-103:15). In that position, plaintiff oversaw defendant Leland's "D" shift, which had a reputation for being "dysfunctional." (Fox Dep. 174:5-16). In her position as lieutenant, plaintiff was responsible for administering discipline to her subordinates, (id. 165:11-22), organizing training activities, (see id. 143:8-12), ensuring daily tasks were completed, (see id. 230:12-23), preparing paperwork, (see id. Ex. 5), and leading on the scene when responding to an emergency call. (See id.).

---

2010 performance evaluation (2010 Performance Evaluation, DE 32-18); plaintiff's personnel file request (DE 32-19); an inventory of plaintiff's personnel records (Fox Personnel Records, DE 32-20); an email from defendant Grimes forwarding a harassment complaint, made by plaintiff, to defendant Leland's lawyer (Grimes Email, DE 32-21); and a read receipt, showing defendant Grimes had opened an email sent to him by plaintiff on January 2, 2011 (Read Receipt, DE 32-22).

As relevant to plaintiff's claims, shortly after her promotion, plaintiff began to experience difficulties with her co-workers. Such difficulties, in large part, came from her subordinates. On at least five or six occasions plaintiff offered to cook dinner for her shift. The shift agreed, but after plaintiff purchased and cooked the food, her subordinates backed out, leaving her with the bill. (Id. 142:4-23). In addition, plaintiff's subordinates would ignore her attempts to facilitate training, and occasionally left the station without telling her where they were going. (Id. 144:7-145:4; 148:9-150:12). However, plaintiff's primary complaint is that her subordinates were disrespectful and did "not going through [her] the way that they would . . . one of the male lieutenants. (Id. 151:6-13).

Plaintiff also endured "condescending" and "disrespectful" behavior from others within the department. In particular, her relief shift supervisor ("RSS"), a position that acts as a shift lieutenant's second-in-command, often behaved in a manner plaintiff found offensive and harassing. (Id. 109:13-19). Plaintiff worked with two individuals in the RSS position during her time as shift lieutenant. Her first RSS, Jason Thornton, openly avoided interacting with plaintiff while working the same shift, often flatly refusing to perform tasks she assigned to him. (Id. ¶19). Moreover, he made derogatory comments about plaintiff's promotion, saying she was promoted only because of her gender. (Id. ¶¶13, 19). Plaintiff's second RSS, R.J. Thornton, brother of Jason Thornton, often broke chain-of-command and bypassed plaintiff to complain to her superiors about unpopular decisions she had made. (Fox Dep. Ex. 5).

Plaintiff also experienced disrespectful behavior on the part of assistant chief Hayes and defendant Grimes. Plaintiff contends that once she was promoted, defendant Grimes began to treat her "differently then [sic] other male lieutenants." (Fox Decl. ¶6). In particular, plaintiff was not provided with any training to facilitate her transition into her new role (Id. ¶7). Nor was she

4

provided the information necessary to log into the lieutenant's computer for approximately a month after her promotion, despite repeated requests. (Id. ¶8). Moreover, plaintiff was not provided assistance in completing certain certifications, which had been provided to her male counterparts; was required to complete additional tasks not required of her male counterparts; and was not allowed to give her subordinates their performance evaluation, unlike her male counterparts. (Id. ¶¶ 9-11).

In June 2010, plaintiff received a negative performance evaluation. (Fox Dep. Ex. 4). In that evaluation, it was noted plaintiff failed to meet any of the four goals set for her at her 2009 performance evaluation. (Id.). The evaluation also noted plaintiff had missed several meetings, and was doing a generally poor job communicating with the members of her shift. (Id.). Plaintiff also had two complaints lodged against her by another lieutenant for failure to maintain oxygen tanks at appropriate levels. (Id. Exs. 7 & 8). Plaintiff attempted to contest this negative evaluation, but was unable to fully address her complaints with defendant Grimes. (Grimes Dep. 193:3-194:12).

On December 1, 2010, defendant Grimes held a meeting with plaintiff's shift. (Fox Decl. ¶63). A primary purpose of the meeting was to discuss procedural issues accruing from a car wreck resulting in a fatality. (Grimes Dep. 169:22-170:5). After the meeting was excused, plaintiff met with defendant Grimes and assistant chief Hayes. (Fox Decl. ¶63). Defendant Grimes informed plaintiff that members of her shift had been coming to him to discuss plaintiff's deficiencies, specifically stating they were "throwing [her] under the bus." (Id. ¶¶58, 61).

At that time, defendant Grimes remarked that plaintiff "must feel like [she] was in a hostile working environment." (Id. ¶59). Plaintiff responded that she did and attempted to alert defendant Grimes to the harassing behavior inflicted by her subordinates and peers, but defendant Grimes ended the meeting. (Id.; Grimes Dep. 258:25-259:18). Defendant Grimes later noted that, although

he heard plaintiff's complaints, he believed stepping in and demanding plaintiff's shift respect her would be detrimental to plaintiff's authority. (Id. 261:7-18; Jan. 12, 2011, Board Minutes). Although defendant Grimes assured plaintiff he was not considering terminating her, (Fox Decl. ¶61), he privately did consider terminating her. (D. Grimes Decl. ¶10). Also at this meeting, defendant Grimes gave plaintiff suggestions on how to be a more effective leader. (See Grimes Dep. 209:1-201:8). The meeting also turned heated at times, with plaintiff raising her voice to defendant Grimes "a few times." (Id. 207:2-9).

During the next month, plaintiff submitted three formal discrimination complaint to defendant Grimes and assistant chief Hayes. (Fox Decl. ¶¶ 63-65). Plaintiff filed her first complaint, which went unanswered, on December 8, 2010. (Id. ¶¶63-64). Plaintiff again submitted a discrimination complaint on December 21, 2010. (Id.). When this complaint too went unanswered, plaintiff contacted an attorney to file a formal complaint of gender discrimination. (Id. ¶65). On January 2, 2011, plaintiff again complained to defendant Grimes of gender discrimination. (Id. ¶64). Contrary to department policy, defendant Grimes never attempted to investigate plaintiff's harassment complaints. (Fox Decl. ¶¶22, 60. See generally Harassment Policy).

On January 2, 2011, plaintiff also told a co-worker, Kelly Gore, she had contacted an attorney to file a formal charge of discrimination and encouraged Gore to do the same. (Id. ¶65). Instead, after becoming aware of plaintiff's contact with an attorney, Gore relayed plaintiff's formal discrimination complaint to defendant Grimes. (See Gore Letter). On January 3, 2011, defendant Grimes recommended to the Board of Directors that plaintiff be terminated. (Jan. 3, 2011, Board Minutes). The Board accepted defendant Grimes' recommendation, and plaintiff was terminated on January 5, 2011. (Fox Decl. ¶67). Although plaintiff was terminated on the basis that she

6

refused to accept suggestions to improve her performance, plaintiff was never disciplined prior to her termination. (Grimes Dep. 202:2-11; 202:12-203:22; 207:1-24; 209:1-211:12). However, plaintiff failed to implement defendant Grimes December 1, 2010, suggestion in the month hence. (Id. 209:1-210:13).

In addition to her own harassment, plaintiff recounts a locker-room-like atmosphere at the fire station. She recalls that, once, at a meeting, Kelly Gore was called "hooker," which defendant Grimes heard but did not undertake actions to correct. (Fox Decl. ¶38). Plaintiff contends that as a result of the disrespect and insubordination to which she was subjected, as well as defendant Grimes "tacit approval" of this behavior, she began to fear for her personal safety. (Id. ¶¶36, 40). Specifically, she contends her inability to trust her shift members led her to fear for her safety in emergency situations. (Id. ¶41). As a result, she was apprehensive about going to work, suffered anxiety, and was under a great deal of stress. (Id.).

## DISCUSSION

A.    Motion to Strike

Defendants move to strike certain exhibits attached to plaintiff's brief in opposition to summary judgment for failure to comply with Federal Rule of Civil Procedure 56(c) & (e). In particular, defendants seek to exclude (1) plaintiff's declaration; (2) a letter written by Kelly Gore, plaintiff's coworker, to defendant Grimes, dated January 2, 2011; (3) plaintiff's EEOC intake questionnaire; (4) plaintiff's Right to Sue Letter, dated October 9, 2012; (5) defendant Grimes' EEOC interview notes; and (6) a read receipt sent from defendant Grimes email address to plaintiff, triggered when an email plaintiff sent defendant Grimes was opened, ("Read Receipt").

1.    Plaintiff's Declaration

Defendants first move to strike a number of paragraphs contained within plaintiff's declaration.  Defendants argue the targeted statements are offered solely to contradict plaintiff's deposition testimony in an impermissible attempt to create a dispute of material fact.  In the alternative, defendants contend a number of the challenged statements are hearsay.  Plaintiff has responded with a line-item approach to each contested paragraph, and rejects defendants characterization of her statements.

As an initial matter, the court may not strike plaintiff's declaration in its entirety.  In evaluating the challenged material, it would be inappropriate for the court to strike the entire affidavit because a small number of the assertions contained therein are inadmissible.  Rather, the court's analysis must exclude only the inadmissible portions of the affidavit.  See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

After thorough examination of each challenged paragraph, many of defendants' arguments are without merit.  In particular, challenged paragraphs 6-10, 12-13, 18-26, 28, 30-31, 33-37, 48-49, 51, and 70 do not conflict with plaintiff's deposition testimony. Although there may be variations between plaintiff's testimony and the statements made in plaintiff's affidavit, the inconsistencies are not of such magnitude that they constitute contradiction.  Instead, minor variations in plaintiff's statements go solely to the weight of plaintiff's evidence, not its admissibility.  In addition, the substance of these challenged paragraphs does not constitute hearsay.   In addition, the inconsistencies between the declaration and deposition testimony do not create a genuine issue of material fact, precluding summary judgment.

8

Nevertheless, three challenged statements require the court's specific address. First, defendants contest the admissibility of paragraphs 14 and 15. Therein, plaintiff states: "Lieutenant Christopher Hunt repeatedly disparaged my work to other Leland Fire/Rescue employees,"(Fox Decl. ¶14), and "It is well known that Lieutenant Hunt does not believe that women should work in the fire service," (Id. ¶15). These paragraphs may not be considered for the truth of the matter asserted because they are hearsay.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Plaintiff's deposition testimony reveals that none of the alleged statements were made to her directly. Rather, she demonstrates that she heard these statements second hand, through other co-workers, whose depositions either were not taken or are not before the court.

Specifically, plaintiff reveals that she learned of disparaging comments Hunt allegedly made about her work from other coworkers. (Fox Dep. 114:16-115:10). Plaintiff, in addition, admits she has "not heard him say" anything about his beliefs on women in fire service. (See id. 115:15-116:15). This distinction is crucial to the inadmissibility of paragraphs 14 and 15 of plaintiff's affidavit. If plaintiff had heard Hunt make such statements, they would have been relevant and admissible without regard to the truth of the words contained therein. Specifically, Hunt's words may have been perceived by plaintiff as harassing, regardless of whether Hunt actually held those beliefs. However, as presented here, plaintiff's knowledge of Hunts' statements entirely depends on the truth of statements made by an unsworn third party, when communicating that information to plaintiff. Accordingly, they are out of court statements offered for the truth of the matter asserted therein and cannot be considered for their truth.

However, plaintiff contends these statements simply are illustrative of her belief that she was subjected to hostile work environment harassment, and, in addition plaintiff characterizes the statements as probative of her perception that the conduct at issue was related to gender. When considered for these limited purposes, these statements are admissible. Specifically, when the statements are framed in the light set forth by plaintiff, they are considered only for their effect on plaintiff. Accordingly, these statements may be considered for that proposition.

Defendants also challenge paragraph 65, wherein plaintiff states "On January 2, 2011, I spoke with Kelly Gore who complained to me about how the male employees in the Department were treating her. I advised Kelly that she did not have to accept the way she was being treated and that I had contacted an attorney and made formal complaints of gender discrimination," (Fox Decl. ¶65), as hearsay.

Defendants' challenge specifically relates to the statement of Kelly Gore contained within plaintiff's larger statement. Plaintiff, however, contends Gore's statement is not offered for the truth of the matter asserted, but instead is offered solely to provide context to plaintiff's own statements and actions. When offered for this limited purpose, Gore's statement is not hearsay. Specifically, the veracity of Gore's statement about her derisive treatment is not in issue. Instead, plaintiff offers Gore's statement solely to demonstrate why she reacted in a certain way. Accordingly, although the court will not consider it for its truth, the statement should not be stricken from the record.

In sum, much of plaintiff's declaration remains the same. However, paragraphs 14 and 15, as well as the statement of Kelly Gore contained within paragraph 65, are to be considered only for its effect on plaintiff, rather than the truth of the matter asserted.

2. Gore's January 2, 2011, Letter

Defendants next argue the Gore Letter is inadmissible. Defendants contend the letter is (1) hearsay and (2) has not been authenticated properly. Plaintiff counters, arguing the letter is not hearsay because it was part of the EEOC's investigation of her harassment complaint and is thus exempt from the prohibition on hearsay pursuant to Federal Rules of Evidence 803(6) and (8). In addition, plaintiff submits the letter is properly authenticated, because defendant Grimes identified the letter in his deposition.

Neither party appropriately analyzes the hearsay issues germane to the Gore Letter. The letter is hearsay, but is admissible if relied upon not for the truth of the matter asserted therein, but to demonstrate defendants believed plaintiff had contacted the EEOC to file a harassment complaint. Plaintiff's contention that the letter may be considered for its truth solely because it was submitted to the EEOC is in error. Plaintiff argues that the letter is exempt under Federal Rule of Evidence 803(8)(A)(iii) as a fact found by an agency in the course of its investigation. However, the Gore Letter is not a "fact" found by the agency, but rather is a document submitted to the agency from which it could have found facts. See Beech Aircraft Corp v. Rainey, 488 U.S. 153, 175 (1988) (noting Rule 803(8)(A)(iii) covers only facts and opinions contained within an agency report). Nor can plaintiff rely on Federal Rule of Evidence 803(8)(ii) by contending that this was a matter the EEOC was required to observe. That rule only covers matters observed by the agency, not unsworn documents prepared and submitted by third parties.

Likewise, plaintiff's argument regarding Rule 803(6) is unavailing. In particular, there is no evidence that the letter, as produced by the agency, was created by "someone with knowledge" of Gore's record-keeping practices Fed. R. Evid. 803(6)(A). The agency, collecting records from

third parties, does not acquire personal knowledge of the incident or practices in question. In addition, there is insufficient evidence of record from which the court could conclude Gore regularly made records concerning her conversations with others as contemplated by Federal Rule of Evidence 803(6)(C). See Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 205 (4th Cir. 2000) (noting "routine and habitual patterns of creation lend reliability to business records"). Thus, the letter is not a business record. Accordingly, the substance of the letter may not be considered properly by the court.

Nevertheless, if the letter may be considered for any other purpose, defendants' motion to strike must be denied. Here, the letter is relevant regarding defendants' belief that plaintiff contacted the EEOC. Critically, it is of no moment whether plaintiff *actually* contacted the agency. Rather, the letter shows that, as of January 2, 2011, defendants had received a communicating indicating she had. See United States v. Ayala, 601 F.3d 256, 272 (4th Cir. 2010) (noting statements may be admitted to show they were made, not for the truth of the matter asserted).

In addition, the letter has been properly authenticated. A document may be authenticated by testimony that the document in issue "is what it is claimed to be," or by describing identifying characteristics. Fed. R. Evid. 901(b)(1) & (4). At deposition, defendant Grimes testified that he received a statement from Kelly Gore on January 2, 2011. (Grimes Dep. 201:7-10). Further, defendant Grimes testified that the statement referenced a conversation Gore had with plaintiff, specifically noting that the letter indicated plaintiff was going to contact an attorney. (Id. 201:11-20). This sufficiently identifies the Gore Letter, which is dated January 2, 2011, is signed by Kelly Gore, and references plaintiff's statement that she "talked to a lawyer." (Gore Letter, DE 32-11).

### 3. EEOC Intake Questionnaire

Defendant third moves to strike plaintiff's EEOC intake questionnaire, arguing the document is hearsay, and also contending the document is irrelevant, as it is offered to expand impermissibly the scope of plaintiff's Title VII claim. Plaintiff, on the other hand, contends the document is not hearsay, because it is part of a public record. Plaintiff also argues that the document is not hearsay, because it is not offered to prove the truth of the matter asserted therein. Instead, plaintiff contends, the document is being offered to demonstrate hostile work environment harassment is reasonably related to her charge of discrimination, where the formal charge does not specifically address harassment. (See EEOC Charge, DE 32-14).

### a. Hearsay

The EEOC Intake Questionnaire, in large part, is hearsay, if considered for the truth of the matter asserted therein. As noted, hearsay is a declarant's statement made outside of the current hearing or trial, offered into court to prove the truth of the matter asserted therein, and not otherwise subject to any exceptions. Fed. R. Evid, 801(c); see also Fed. R. Evid. 803. The intake questionnaire contains plaintiff's initial questionnaire; plaintiff's termination letter; and a list of incidents, which plaintiff contends evidences harassment.

If considered for the truth of the matter asserted, plaintiff's initial questionnaire and list of incidents are hearsay. The initial questionnaire contains information on plaintiff, defendant, the persons responsible for her discrimination, as well as the names of others who were treated differently than plaintiff. The associated list, which plaintiff apparently included as an attachment to her initial questionnaire, contains summations of harassing incidents, written by plaintiff, which

are undated and unsworn. Both of these documents present plaintiff's out of court statements and may not be considered for the truth of the matter asserted, else they become hearsay.

Nevertheless, plaintiff contends these documents may be admitted properly as under Rule 803(8)(A)(iii). As noted, that rule exempts "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). These documents squarely fall outside of the ambit of Rule 803(8). Specifically, these documents are plaintiff's contentions regarding her harassment, not findings or opinions of the agency itself, as contemplated by the Rule. See Beech Aircraft, 488 U.S. at 175.

However, plaintiff's termination letter cannot be excluded as hearsay. The letter, authored by defendant, squarely falls outside the ambit of the hearsay rule, where plaintiff offers it against defendant. In particular, Federal Rule of Evidence 801(d)(2)(A) explicitly excludes statements of opponents made in their representative capacity. In addition, Rule 802(d)(2)(D) covers statements made by a party's agent, within the scope of the agency relationship. Here, defendant Grimes authored the letter in his capacity as chief of defendant Leland. Moreover, because defendant Grimes was in charge of employment matters, he was acting within the scope of his employment. Accordingly, this document is admissible against both defendants.

      b.    Not Offered for the Truth[2]

Alternatively, plaintiff argues the document is admissible not for the truth of the matter asserted, but to circumvent the exhaustion of administrative remedies requirement, as her formal charge of discrimination does not include explicit allegations of sexual harassment. Failure to

---

[2]Where the court has already determined plaintiff's termination letter is not hearsay under the applicable rule, see Fed. R. Evid. 801(d)(2)(A) & (D), the following discussion necessarily only covers plaintiff's initial questionnaire and the document provided by plaintiff detailing incidents of harassment.

exhaust administrative remedies under Title VII "deprives the federal court of subject matter jurisdiction over the claim." Jones v. Calvert Grp. Ltd., 551 F.3d 297, 300 (4th Cir. 2009). However, in certain limited circumstances, a link between plaintiff's charge of discrimination, and the facts alleged in the complaint, may afford plaintiff an opportunity to be heard on the merits of her claim, despite failure to exhaust. See Evans, 80 F.3d at 963. As relevant here, plaintiff argues her intake questionnaire may be used to show her harassment complaint is "reasonably related to the original [charge] . . . [or, in the alternative, would have been] developed by reasonable investigation of the original [charge]." Id.; see also King v. Seaboard Coast Line R. Co., 538 F.2d 581, 583 (4th Cir. 1976) (quoting EEOC v. Gen. Elec., 532 F.2d 359, 365 (4th Cir. 1976)).

Plaintiff's argument must fail, where she attempts to rely on her intake questionnaire to supplement her charge of discrimination. As noted, circumvention of the exhaustion requirement is appropriate only where the formal charge and complaint are related. See King, 538 F.2d at 583. Previously, the Fourth Circuit unequivocally has held intake questionnaires may *not* be considered part of the formal charge. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408-09 (4th Cir. 2013). Here, the documents contained in the intake questionnaire are irrelevant under Federal Rule of Evidence 401. That Rule states that relevant evidence is evidence with "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." In light of the Fourth Circuit's opinion in Balas, the court is compelled to conclude that the contents of plaintiff's intake questionnaire are not "of consequence" to the scope of plaintiff's formal charge of discrimination. As noted, in Balas, the court unequivocally stated that the questionnaire is not to be considered part of the formal charge. Balas, 711 F.3d at 408-09.

15

Accordingly, plaintiff's EEOC Intake Questionnaire must be excluded in large part. The EEOC form constituting plaintiff's initial questionnaire is excluded, as well as the attachment provided by plaintiff, because they are hearsay and are otherwise irrelevant.

4.    Right to Sue Letter

Defendants next move to strike plaintiff's Right to Sue letter. Defendants contend the Right to Sue Letter is irrelevant, where its conclusion that defendants likely violated Title VII is the result of a different legal standard that the one applied in the district court. Plaintiff, however, argues that the letter is admissible because it is not hearsay when offered to prove plaintiff subjectively believed she suffered sexual harassment and that plaintiff's belief is objectively reasonable. See Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (" [I]n order to be action able under [Title VII], a sexually objectionable environment must be both objectively and subjectively offensive.").

As discussed, evidence is "relevant" if it has "any tendency" to make a fact in consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Here, plaintiff's contention that the Right to Sue Letter strengthens her claim that her work environment was both subjectively and objectively hostile cannot succeed in transforming the letter into relevant evidence. First, with regard to the "subjectively offensive" requirement, the letter evidences that plaintiff filed a complaint with the EEOC, the agency thereafter evaluated her complaint, and eventually issued her a Right to Sue letter. However, the issuance of such letter does not, in any way, speak to plaintiff's subjective and internal opinions and beliefs about the hostility of her work environment.

In addition, the letter is irrelevant to the existence of an objectively hostile work environment. To determine whether an environment is "objectively hostile," courts examine the totality of the circumstances. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001)

16

(citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Considerations relevant to the court's totality analysis "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes wiht an employee's work performance." Harris, 510 U.S. at 23.  However, the court's analysis is not to be influenced by the EEOC's administrative determinations. .  See Laber v. Harvey, 438 F.3d 404, 420 (4th Cir. 2006) (noting Title VII gives the right to *de novo* consideration, without regard to EEOC findings).

In that light, the court concludes that the Right to Sue letter is irrelevant for purposes of demonstrating "objective hostility."  Of note, the Right to Sue letter does not directly address any relevant factor enumerated by the Supreme Court.  Instead, the letter evidences an administrative determination, non-binding on this court.  Accordingly, the EEOC's conclusion, upon analysis of the facts before it, made under a different legal standard, are not relevant to the matter currently at bar.

5.    Grimes' Interview Notes

Defendants next move to strike notes taken by an EEOC investigator during defendant Grimes' interview with the agency.  Defendants contend the notes are hearsay, because the notes are unsigned and undated and because defendant Grimes did not make the statements contained therein while testifying under oath.  Defendant further contends the notes cannot be authenticated properly.  Plaintiff counters by arguing that the notes are part of the EEOC's investigatory record, thus exempting them from the rule against hearsay, and were authenticated by defendant Grimes during his deposition.

The notes may not be excluded as hearsay. Although Federal Rule of Evidence 801(c) defines hearsay as a declarant's out of court statement introduced for the truth of the matter contained therein, certain statements are excluded from the general hearsay prohibition. In particular, Federal Rule of Evidence 801(d)(2) provides several exclusions, meaning that, although a statement logically qualifies as hearsay, the Rule specially exempts it. The statements of defendant Grimes contained in the interview notes squarely fall into that category. In particular, the statements qualify as both statements of defendant Grimes, under Federal Rule of Evidence 801(d)(2)(A), and defendant Leland, because defendant Grimes was being interviewed by the agency in his official capacity, as chief of the Leland Volunteer Fire/Rescue Department, pursuant to Federal Rule of Evidence 801(d)(2)(D).

Moreover, the fact that plaintiff submitted defendant Grimes' statements in a format transcribed by a third party does not alter the court's analysis. Under Federal Rule of Evidence 803(8)(A)(ii), "matters observed while under a legal duty to report" are exempt from the prohibition against hearsay. Fed. R. Evid. 803(8)(A)(ii). Because the EEOC has a legal duty to investigate sex based harassment and retaliation, the interview notes fall within the ambit of Rule 803(8)(A)(ii). See 42 U.S.C. §§ 2000e-5(b), 2000e-6(e), 2000e-8(a) (detailing EEOC's duty to investigate a charge of discrimination).

Finally, the documents are properly authenticated. A document may be authenticated by testimony of a witness that it is what it is claimed to be, or through the use of identifying characteristics. Fed. R. Evid. 901(b)(1) & (4). Here, evidence of record, working in tandem, provides a necessary basis for each layer of statement contained in the interview notes. With regard to defendant Grimes' own statements, he identified a number of statements contained in the

18

interview notes as being made by him and to an EEOC investor, when such statements were read to him during his deposition. (Grimes Dep. 255:15-256:21). Moreover, plaintiff filed a second affidavit in support of her motion to strike that confirms the documents were provided to her as part of the EEOC's investigatory file. (DE 39-2, ¶9).

No hearsay problem exists here, where the statements of defendant Grimes in the EEOC Interview Notes are not hearsay under Federal Rule of Evidence 801(d)(2), and the notes themselves are excluded from the rule against hearsay under Rule 803(8). In addition, because defendant identified a number of the statements contained within his interview notes, and because plaintiff provided a declaration sufficiently authenticating the notes as a document received from the EEOC, the same has been properly authenticated under Rule 901(b).

6. Read Receipt

Finally, defendants move to exclude a read receipt, purportedly automatically generated by defendant Grimes' email account when he opened an email from plaintiff. Defendants argue that the Read Receipt is unauthenticated hearsay. Defendants' argument fails.

The Read Receipt is not hearsay. As noted, hearsay is a declarant's out of court statement offered to prove the truth of the matter asserted therein. Fed. R. Evid. 801(c). As an initial matter, it is questionable whether the Read Receipt is a "statement" at all. Federal Rule of Evidence 801(a) defines "statement," and specifically notes that a "statement" must be "intended . . . as an assertion." Id. Here, it is questionable that the Read Receipt was intended to be assertive. See United States v. Jackson, 588 F.2d 1046 1049-50 (5th Cir. 1979) (noting that conduct is not assertive unless it is intended as such).

19

In any event, even assuming *arguendo* the Read Receipt qualifies as a statement under Rule 801(a), the read receipt is still admissible against both defendants where it is excluded from Rule 801. See Fed. R. Evid. 801(d)(2)(A) & (D). In particular, the email was generated by defendant Grimes, thus Rule 801(d)(2)(A) allows its admission against him. Rule 801(d)(2)(D), in addition, allows its admission against defendant Leland, because the statement came from defendant Grimes official email address, and defendant Grimes was required, as a function of his job, to investigate and respond to complaints of harassment. (Position Description, DE 32-2).

In addition, the Read Receipt may be properly authenticated under Federal Rule of Evidence 901(b)(1) & (4). Defendants argue proper authentication is impossible, because plaintiff failed to produce information about the email's origin, including the mechanism by which it was generated. In essence, defendants contend plaintiff should have submitted a technical affidavit explaining how "read receipt" emails are created, to ensure reliability.

This argument bears no weight on the ultimate admissibility of defendant Grimes' email. Courts occasionally require technical affidavits supporting the admissibility of email communications. Often, such affidavits are required where the email is being admitted as a business record, pursuant to Federal Rule of Evidence 803(6), or through some other hearsay exception. See Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 545-46 (D.Md. 2007). Under those circumstances reliability is paramount, particularly as the Rule of Evidence governing admissibility requires the court establish the same. Fed. R. Evid. 803(6)(E). Here, however, the reliability of defendant Grimes' email is not at issue, because the email is being admitted as a statement of a party opponent, which does not require the court to ensure reliability. See Fed. R. Evid. 801(d)(2).

In addition, no technical affidavit is required to authenticate properly the Read Receipt. As noted, cases requiring technical affidavits often seek to establish reliability, see, e.g., Lorraine, 241 F.R.D. at 545-46, which is not in issue here. Thus, the Read Receipt may be authenticated by affidavit averring it is what it is claimed to be, or otherwise through the use of identifying characteristics. See Fed. R. Evid. 901(b)(1) & (4). Here, defendant Grimes acknowledges receipt of plaintiff January 2, 2011, email referenced in the read receipt.[3] (Grimes Dep. 221:16-222:14). In addition, plaintiff avers that the email was sent to her email address from defendant Grimes email address (See DE 39-2, ¶10; see also Grimes Dep. 221:16-222:14 (acknowledging the read receipt came from defendant Grimes email)). Accordingly, the Read Receipt may properly be admitted.

B.      Motion for Summary Judgment

1.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

---

[3]It is of no matter that defendant Grimes contests the date on which he saw plaintiff's email. That discrepancy goes to the weight of the evidence. It is sufficient for the minimal authentication threshold that defendant Grimes acknowledged he saw the email referenced in the document.

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." Id. at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id.; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2. Analysis

a. Harassment

Defendants first move for summary judgment on plaintiff's hostile work environment harassment claims.[4] To survive a motion for summary judgment, plaintiff must adduce evidence of (1) unwelcome conduct; (2) based on her sex ; (3) "which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment"; and (4) which is imputable to defendants. Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010). Discrimination is "based on [plaintiff's] sex when it would not have occurred "but for" her gender. See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997).

Defendants contend that the alleged harassment suffered by plaintiff was not "based on" her sex. Plaintiff, on the other hand, argues that she was treated differently than similarly situated males, because of her sex. Plaintiff contends she was the victim of gratuitous and pervasive "insubordination, disrespect, and harassment" from her subordinates, peers, and superiors. In addition, she relies on the undisputed facts showing defendants failed to give her a log-on to the department's computer, for at least one month; did not provide her necessary training accompanying

---

[4]Defendants contend the court does not have jurisdiction over plaintiff's hostile work environment harassment claim, where plaintiff has failed to exhaust her administrative remedies. However, as plaintiff has alleged a claim under 42 U.S.C. § 1983, which does not require administrative exhaustion, the court must reach the merits of plaintiff's hostile work environment harassment claim. See Keller v. Prince George's Cnty., 827 F.2d 952, 956 (4th Cir. 1987); Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285-86 (4th Cir. 1985).

In any event, the court has jurisdiction over plaintiff's Title VII claim. Defendants contend the court lacks jurisdiction, where plaintiff's formal charge of discrimination does not include allegations of harassment. The court has jurisdiction over "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." Evans v. Techs. Application & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). If the "factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation the connection between the charge and the claim is sufficient." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). In the instant case, plaintiff's charge provides that she was discriminated against because of her sex, and in retaliation for complaining of her subordinates unwillingness to take direction from her on numerous occasions. (EEOC Charge). Although a close call, the court determines this allegation, could have reasonably uncovered the facts alleged giving rise to plaintiff's hostile work environment claim.

23

her promotion; assigned her additional duties, which were not assigned to male lieutenants; prohibited her from giving performance evaluations; failed to give her requested assistance in completing certification courses, which they had afforded previously to male employees; and failed to provide her the opportunity to contest an erroneous performance evaluation, despite that opportunity being afforded to males.

Although plaintiff has adduced ample evidence suggesting differential treatment in the conditions of her employment, she has failed to forecast any evidence linking that differential treatment to her sex. With regard to plaintiff's principal complaint of harassment, she failed to produce a scintilla of evidence demonstrating the genesis of her shift's disrespectful and insubordinate behavior was her sex. In fact, plaintiff's admission that the typical firehouse promotion process commonly results in "hard feelings" because of who did, or did not, get promoted, (Fox Dep. 177:4-17), belies her argument that sex was the "but for" cause of her purported harassment. This is especially true because she was promoted over another "popular" fire fighter. (Fox Decl. ¶13).

In addition, plaintiff has failed to offer specific evidence linking her claims stemming from other alleged harassing incidents to sex. For example, although plaintiff was required to make schedules for her shift, a task not assigned to male employees, she provides no evidence that other shifts were experiencing problems at the same time, or of the same magnitude, as her own. (See Fox Dep. 234:22-235:8). Plaintiff, moreover, has failed to demonstrate that *any* newly promoted lieutenant received training. (Id. 169:2-170:12). Finally, with regard to plaintiff's contention she, personally, was not allowed to provide her subordinates with performance evaluations, plaintiff has failed to demonstrate that defendant Leland's decision to preclude her from such activities was

related to her sex.[5] In sum, allowing plaintiff's sexual harassment claim to proceed to trial would necessarily require the court to speculate over the motives of plaintiff's subordinates, peers, and supervisors.

Defendants also contend the harassing conduct at issue in this case was neither "severe" nor "pervasive." The court agrees. "[I]n order to be actionable under [Title VII], a sexually objectionable environment must be both objectively and subjectively offensive." Faragher, 524 U.S. at 787. In evaluating whether conduct is "objectively" offensive, the Supreme Court has mandated that lower courts evaluate "the totality of the circumstances." Id. at 787-88. The Fourth Circuit has clarified the "totality" test, noting that it includes (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. Mosby-Grant, 630 F.3d at 335 (citing Faragher, 524 U.S. at 787-88).

Plaintiff heavily relies on the fact-specific nature of this inquiry in her argument opposing defendant's motion for summary judgment. While the objective hostility is "quintessentially a question of fact," id., in certain circumstances summary judgment is appropriate to avoid "creat[ing] a 'general civility code' in the workplace." Id. (quoting Oncale v. Sundowner Offshore Servs, Inc., 523 U.S. 75, 81 (1998)). The offensive conduct at issue here does not rise to such a level that it "alter[s] the 'conditions' of [plaintiff's] employment." Oncale, 523 U.S. at 81.

---

[5]The court acknowledges plaintiff's harassment claim extends to myriad other incidents, which are too numerous to specifically enumerate herein. In many circumstances, plaintiff's only evidence supporting her contention is her affidavit, in which she avers that a harassing or insubordinate event occurred, that a male counterpart was treated differently, or both. However, plaintiff offers no evidence that the disparate treatment was *but for* her female status. Indeed, plaintiff's strategy appears to be to rely on sheer numbers to suggest to the court that her sex was the but-for cause of her situation. Yet, without a context in which to place defendants' numerous actions, the court is unable to conclude that plaintiff's sex was *the* motivating factor, without engaging in speculation.

Although plaintiff avows disrespect from subordinates and peers occurring on a near-daily basis, it is the nature, not the quantity, of the conduct complained of that justifies summary judgment for defendant. The type of conduct at issue simply is not cognizable as harassment under Title VII. See Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006); see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In Baquir v. Principi, the Fourth Circuit held that plaintiff's contention his coworkers "did not communicate with him" and allegation that one coworker had "told [plaintiff] not to speak to him" fell short of the type of conduct required to sustain a hostile work environment claim. Baquir, 434 F.3d at 747. In Bass v. DuPont, the court noted that typical "workplace dispute[s]" and "callous behavior" did not describe the type of severe or pervasive activity necessary to sustain a hostile work environment claim. Bass, 324 F.3d at 765.

These cases are instructive in disposition of the case at bar. Plaintiff primarily contends her subordinates ignored her, undermined her authority, and otherwise circumvented her place in the chain of command. These allegations are nothing more than ordinary workplace disputes stemming from plaintiff's coworkers failure to communicate with and through her. Although the behavior fairly could be called insubordinate, it amounts to nothing more than "callous behavior" from coworkers.

In addition, despite plaintiff's protestations regarding the use of demeaning language within the fire house, she only produces evidence of two such comments. First, plaintiff alleges a subordinate called Kelly Gore "hooker," at a meeting. (Fox Decl. ¶38). Next, plaintiff notes a male lieutenant said plaintiff was promoted because of her sex. (Id. ¶13). Title VII does not prohibit such isolated comments. See Faragher, 524 U.S. at 788 ("A recurring point in [hostile work environment harassment] opinions is that simple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (internal citations and quotations omitted).  Two incidents, without more, constitutes, at worst, "offhand comments." Thus, denying summary judgment on that basis alone would be to impose a "general civility code."  See Mosby-Grant, 630 F.3d at 335.

In sum, defendants' motion for summary judgment must be granted on plaintiff's harassment claims.  Plaintiff has failed to forecast any evidence linking the alleged hostile work environment to her sex.  Moreover, the majority of facts giving rise to plaintiff's claim are insufficient as a matter of law to support a hostile work environment claim.

b.     Retaliation

Defendants also move for summary judgment on plaintiff's retaliation claims.  Plaintiff alleges she was retaliated against when she reported derisive treatment by her inferiors to defendant Grimes.  Plaintiff presents no direct evidence of retaliation, and thus the court analyzes her claim under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the burden-shifting approach, plaintiff must first establish a *prima facie* claim of retaliation.  The *prima facie* case requires plaintiff to prove (1) that she engaged in protected activity; (2) that her employer took an adverse employment action; and (3) that a but-for causal connection existed between the protected activity and the asserted adverse action.  Univ. of Tex. Sw. Med. Ctr. v. Nassar, __ U.S. __, 133 S. Ct. 2517, 2532-33 (2013); King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).  Once plaintiff makes this showing, defendant may defend itself by producing evidence of a "legitimate non-retaliatory reason" for taking the adverse employment action.  Price

v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). Finally, if defendant makes this proffer, plaintiff must prove that defendants' non-retaliatory reason is a pretext for retaliation. Id.

In this case, assuming *arguendo* plaintiff can establish the *prima facie* case, her retaliation claim fails because she cannot demonstrate that her termination was truly motivated by retaliation. Defendants proffer a legitimate non-retaliatory reason for plaintiff's termination. (Defs.' Br. , DE 28, at 23). Specifically, in plaintiff's termination letter, defendants noted plaintiff was being terminated for unsatisfactory job performance. (EEOC Intake Questionnaire, DE 32-13; see also Defs.' Br., DE 28, at 23). In addition, at the January 3, 2011, board of directors meeting where defendant Grimes recommended plaintiff's termination, defendant Grimes specifically noted plaintiff was having "performance" issues. (Jan. 3, 2011, Board Minutes, DE 32-12; see also Defs.' Br., DE 28, at 23). In addition, in brief, defendants proffer plaintiff's insubordination toward defendant Grimes at a December 1, 2010, meeting, where plaintiff raised her voice. (See Defs.' Br., DE 28, at 23; see also Grimes Dep. Ex. 24 ¶12; id. 202:12-203:22; 207:2-9). This is sufficient to carry defendants' burden of production. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981).

Thus, as defendants have proffered a legitimate non-retaliatory reason, the burden now is on plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision," id. at 255, but in reality is a pretext *for retaliation*. Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 210 (4th Cir. 2014). To do so, plaintiff may offer evidence to show defendants' explanation is "unworthy of credence" or may offer "other forms of circumstantial evidence sufficiently probative" of retaliation. Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004).

However, regardless of which path plaintiff chooses, she bears the ultimate burden of demonstrating defendants' actions were motivated by a desire to retaliate. See id.

Here, plaintiff cannot carry her ultimate burden to demonstrate she was the victim of unlawful retaliation. In an attempt to create a genuine dispute of material fact on the issue of pretext, plaintiff contends defendants padded her employment file after her termination to give the illusion of legitimate grounds therefor. In addition, she contends defendants knew of her intent to file a formal charge with the EEOC, and they also failed to follow its sexual harassment policies.

With regard to plaintiff's employment-file argument, she contends she had no prior discipline, but that after her termination defendant's added written discipline to her file during the EEOC's investigative process.[6] This is insufficient to establish pretext. Specifically, plaintiff's contention that defendants added documentation to her file to support their case before the EEOC fails to call into question defendants' legitimate reason given for her termination. See Mod-U-Kraf, 775 F.3d at 213 (noting plaintiff's argument must call into question the reason given by defendant).

As noted previously, defendants proffered plaintiff's poor leadership skills and lack of quality as a supervisor as justification for her termination. Plaintiff's argument fails to relate defendants' attempt to provide *post hoc* support for her termination, by adding justification to her employment file to defendants' stated motive for her termination provided at the January 3, 2011, board meeting and in her termination letter. (See Jan. 3, 2011, Board Minutes, DE 32-12; EEOC Intake Questionnaire, DE 32-13). Instead, plaintiff's evidence merely shows defendants did not rely on previous discipline to justify plaintiff's termination. (See Grimes Dep. 199:14-200:7; Fox Decl.

_____

[6]It is unclear what type of documentation was added to plaintiff's employment file after she was terminated. However, construing plaintiff's arguments in the light most favorable to her, the court assumes that *something* was added to plaintiff's file evidencing disciplinary action issued to her,

¶69-70; Fox Personnel Records, 32-20). Plaintiff's arguments concerning a lack of discipline, therefore, are unrelated to defendants' proffered justification and do not support her ultimate burden.

With regard to defendant's proffered justification of "insubordination" toward defendant Grimes, plaintiff contends this justification is pretextual, because defendant Grimes admitted plaintiff's conduct at the December 1, 2010, meeting was not insubordinate in his deposition testimony. (See Grimes Dep. 207:2-9). To establish a Title VII retaliation claim, plaintiff must show that her protected activity was the *but for* cause of her termination. See Burdine, 133 S. Ct. at 2252-54. Here, where defendants provide other legitimate justifications for her termination, a showing that one of the justifications is indicative of pretext is insufficient as a matter of law to defeat a motion for summary judgment.

Plaintiff next argues defendants' knowledge of her EEOC complaint shows their actions were a pretext for retaliation. However, defendants' knowledge of plaintiff's complaint is insufficient as a matter of law to establish retaliatory discharge, where other evidence supports defendants' decision. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) ("[Knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee."); see also Mod-U-Kraf, 775 F.3d at 211. Cf. Dotson v. Pfizer, Inc., 558 F.3d 284, 297 (4th Cir. 2009) (noting that timing, in combination with other factors may be sufficient to defeat a motion for summary judgment).

Here, plaintiff's evidence of timing is insufficient to defeat summary judgment. Plaintiff's 2010 performance evaluation highlights her inability to effectively lead her subordinates as a critical area of concern. (2010 Performance Evaluation, DE 32-18). In addition, other uncontroverted

evidence supports defendant Grimes' statement that plaintiff was a poor supervisor. (Fox Dep. Ex. __, at Fox 209 ¶4 ("[Plaintiff] would not assist in the performance of [necessary maintenance duties in and outside the fire station]. . . . I covered for her for months by performing cleaning and yard duties by myself."); Id. Ex. __, at Fox 218,¶4 ("[Plaintiff] did not have the skills or knowledge a lieutenant must possess. . . . [plaintiff] stayed in her office and did not help with day-to day chores.")).[7]

In addition, the uncontested time line, put forth by defendants, shows defendant's knowledge of plaintiff's EEOC complaint did not play a role in her termination. Defendant Grimes was considering plaintiff's termination around December 1, 2010. (D. Grimes Decl. ¶10). However, defendant Grimes' wife suggested he wait until after the Christmas holiday to do so, because it would "ruin the holiday." (Id.). Thereafter, defendant took vacation until January 2, 2011. (Id. ¶11). Immediately after his return to work, defendant Grimes recommended to the Board that plaintiff be fired. (Id. ¶¶11-12). Plaintiff has put forth no evidence to contradict this time line.

Finally, plaintiff contends defendants never addressed any leadership issues with her prior to her termination. Plaintiff also argues defendants never investigated her complaints of discrimination, a violation of department policy.

Plaintiff's first argument stems from a larger issue, yet unaddressed, bearing on her 2010 performance evaluation. In that evaluation, defendants addressed plaintiff's shortcomings as a leader. (2010 Performance Evaluation). However, plaintiff contends the evaluation was erroneous. Assuming plaintiff's contentions regarding the validity of her evaluation are true, it is not the place

_____

[7]The evidence cited is an attachment to plaintiff's deposition. However, it was neither separately filed nor clearly marked with ane exhibit number. Rather, the parties employed an independent numbering system for their documents. Thus, "Fox 209" and "Fox 218" refer to the independent numbering system employed by the parties.

of this court to intercede in such matters.  See Hawkins v. PepsiCo, Inc., 203 F.3d 247, 281 (4th Cir.

2000) (noting that a "difference of opinion" coupled with allegations of discrimination "cannot

reasonably support the conclusion" that plaintiff's discharge was improperly motivated); see also

DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) ("It is not [a court's] province to

decide whether [an employer's] reason [for terminating an employee] was wise, fair, or even

correct.").

In any event, plaintiff suggests defendants' failures to both alert her to leadership issues and

investigate her harassment claims indicate pretext for retaliation, because they are violations of

established department policy. "[F]ailure to follow company policy to report or investigate

[plaintiff's] complaints does not call into question whether [defendants] terminated [plaintiff's]

employment for an unrelated reason. Mod-U-Kraf, 775 F.3d at 213.  Thus, plaintiff's argument that

defendants failed to investigate her harassment complaint is unrelated to the reason for plaintiff's

termination, her failings as a leader.  In addition, although plaintiff argues defendants failed to

address performance issues with her prior to her termination, there is no evidence in the record that

defendants' policies required it. (Discipline Procedures, DE 32-4; see also Grimes Dep. 57:4-58:16;

Hayes Dep. 19:22-20:14 (noting only that, following best practices, lieutenants should document

performance issues of subordinates)).[8]

---

[8] Plaintiff's case is not strengthened by her lack of comparitor evidence.  In evaluating employer conduct it is
often useful to have specific evidence regarding the defendants' treatment of other employees. Here, plaintiff attempts
to introduce comparitor evidence through the statement of defendant Grimes' wife, Diane Grimes, wherein she notes
in her early years as a volunteer with defendant Leland she experienced a somewhat paternalistic attitude from male
firefighters.  (See Jan. 12, 2011, Board Minutes).  However, plaintiff's attempt to introduce such evidence falls short,
especially as it relates to her retaliation claim.  Specifically, the evidence is likely hearsay.  However, even assuming
its admissibility, it is irrelevant to plaintiff's retaliation claim, and does nothing to bolster any dispute of fact regarding
pretext.

In conclusion, defendants are entitled to summary judgment on plaintiff's retaliation claims, because plaintiff has failed to forecast any evidence tending to show defendants' true motive in terminating her was retaliation. Plaintiff merely speculates, based on defendants failure to follow its own protocol, that she was fired in retaliation for reporting derisive treatment. While defendants' choice to terminate plaintiff in the manner, and at the time, they did may be questionable, the "crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." <u>Jiminez v. Mary Wash. College</u>, 57 F.3d 369, 383 (4th Cir. 1995).

## CONCLUSION

Based on the foregoing, defendants' motion to strike is GRANTED in PART and DENIED in PART. (DE 36). Defendants' motion for summary judgment is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 10th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge